NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ERIKA SCHMAL, :
 :
    Plaintiff, : Civ. No. 03-1346 (SRC)
 :
v. : **MEMORANDUM OPINION**
 :
JO ANNE B. BARNHART, :
COMMISSIONER OF SOCIAL :
SECURITY, :
 :
    Defendant. :
 :

**Chesler, District Judge**

    This matter comes before the Court upon the appeal of plaintiff, Erika Schmal ("plaintiff"), of the final decision of the Commissioner of Social Security ("Commissioner") determining that she is not eligible for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the submissions of the parties without oral argument pursuant to L. Civ. R. 9.1(b), denies plaintiff's appeal.

**I. Background**

    Plaintiff filed the instant appeal on March 26, 2003. Plaintiff challenges the Commissioner's decision that she is not disabled and is thus ineligible for Disability Insurance Benefits ("disability benefits") and Supplemental Security Income ("SSI") Benefits. Plaintiff initially filed applications for disability benefits and SSI on November 1, 1995. Both

applications were denied, and upon reconsideration were denied again. In January 1998, in accordance with a class action lawsuit which required the Social Security Administration to review the case, the denial was affirmed. (Record ("R.") 67-68.) On or about March 24, 1998, plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Id. at 70.) On March 25, 1999, plaintiff appeared and testified before ALJ Gordon Mahley. (Id. at 153.) The ALJ concluded that although "the claimant has a severe impairment or combination of impairments . . . she retains the residual functional capacity to return to the work she performed in the past." (Id. at 154). In the decision dated June 30, 1999, the ALJ held plaintiff was "not under a disability, as that term is defined in the Social Security Act and regulations," and, therefore, was ineligible to receive disability benefits or SSI. (Id.)

On or about August 26, 1999, plaintiff filed a "Request for Review of Hearing Decision" with the Appeals Council. (Id. 160-64.) On June 20, 2000, the Appeals Council issued an Order vacating the prior hearing and decision and remanded the matter for further proceedings. (Id. at 165-68.) Upon remand, the Appeals Council instructed the ALJ to:

> Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments;
>
> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of assessed limitations;
>
> Obtain information from Schmal and/or her former employers as to job titles, dates work was performed, rate of compensation, tasks and responsibilities, as well as mental demands and other job requirements; [and]
>
> Obtain evidence from a vocational expert to clarify the demands of any past relevant work and/or the effect of the assessed limitations on the claimant's occupational base. Hypothetical questions should

>reflect the specific capacity/limitations established by the record as a whole and the vocational expert should be asked to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy.

Id. at 167-68 (citations omitted).

On March 13, 2001, plaintiff appeared with counsel and testified at a hearing before ALJ Daniel W. Shoemaker, Jr. (Id. at 25-63.) Plaintiff reported she was born on September 27, 1949 in Budapest, Hungary, and has lived continuously in the United States since August 8, 1979. (Id. at 31-32.) She is a naturalized citizen of the United States. (Id. at 32.) She attended eight years of grade school in Hungary as well as two years of beauty school and that she is able to read, speak, and write basic English with fluency. (Id.) At the time of the hearing, she shared a house owned by her fiancée and had no children under the age of 18. (Id. at 34.) Plaintiff reported she had been working part-time, approximately ten hours a week, as a hairdresser in New Jersey since October 1994. (Id. at 35; 41.) Prior to that position, she worked as a hairdresser in New York for approximately ten years. (Id. at 35-36.) She cuts only men's hair, which involves washing hair, trimming with scissors or a buzzer, and using a blow-dryer and comb. (Id. at 39-40). Prior to May 31, 1979, plaintiff cleaned office buildings, but reported she injured her back on that date and did not work for approximately six years before returning to work as a hairdresser. (Id. at 36-37). Plaintiff indicated she is unable to type, has no computer skills and has limited reading capability. (Id. at 46.) Plaintiff described her activities outside of work as primarily consisting of watching television, cooking, cleaning, or shopping at the grocery or department stores. (Id. at 50.) She sometimes attends church and alternates between standing and sitting while there depending on her comfort level. (Id. at 49.)

With respect to her physical health and condition, plaintiff testified she is 5'3" tall and weighs 200 pounds. (Id. at 33.) She reported discomfort in her lower back and right side when working, sometimes requiring her to sit down after standing for 15 minutes, yet also experiences discomfort when sitting for more than 15-20 minutes. (Id. at 43, 47-48.) She further described pain in her neck, arms, and knees, both while standing and sitting and has difficulty sleeping because of the pain. (Id. at 44-45, 47-48, 50.) Plaintiff reported a doctor told her she has arthritis and a tear in her knee, but she does not take pain medications other than Tylenol and visits a chiropractor once a week. (Id. at 45, 50-51.) The medical reports in the record reflect plaintiff has degenerative arthritis of the cervical spine, lumbar spine and both knees. (Tr. at 15.)

At trial, ALJ Shoemaker presented hypothetical questions to a vocational expert who had reviewed plaintiff's file and listened to her testimony. Given the residual functional capacity ("RFC") described by the ALJ and considering plaintiff's qualifications, age, and past experiences, the expert concluded that there were jobs in the national economy appropriate for the person described. (Id. at 57.) Specifically, the expert suggested work as a housekeeper, cafeteria attendant, waitress, or bench-work type jobs. (Id.) The expert further opined that these jobs would not be appropriate if all of the symptoms described by plaintiff at the hearing were assumed as part of the hypothetical person's description. (Id.)

On or about May 20, 2002, ALJ Shoemaker issued a written decision in which he determined that plaintiff was not entitled to disability benefits. The ALJ made the following findings, ultimately denying plaintiff's claim:

    a.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

b. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
c. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).
d. These medically determinable impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
e. The claimants's allegations regarding her limitations are found not totally credible for reasons set forth in the decision.
f. All of the medical opinions in the record regarding the severity of the claimants impairments have been considered.
g. The claimant retains the residual functional capacity to perform medium work activity. Specifically, the claimant can occasionally lift and/or carry 50 pounds and can frequently lift and/or carry 25 pounds. In an eight-hour work day, she can stand and/or walk and sit about eight hours; has unlimited use of upper and lower extremities for pushing and/or pulling; and can frequently perform postural activities.
h. The claimant has no past relevant work.
i. At the alleged onset date, the claimant was 29 years old (a younger individual), and is currently 52 years old (closely approaching advanced age).
j. The claimant has a "limited education."
k. The claimant has the residual functional capacity to perform the full range of medium work.
l. Based on an exertional capacity for medium work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rules 203.25 and 203.18.
m. The claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision.

(Id. at 21-22)

Plaintiff requested a Review of Hearing Decision on or about July 19, 2002. (Id. at 7.) On or about January 30, 2003, the Appeals Council denied the request concluding that there was no basis under the regulations to grant the review. (Id. at 3-4.) Thereafter, plaintiff filed the instant action. The appeal is fully briefed and before this Court for consideration.

## II. Discussion

A.  Standard of Review

It is well settled that the Commissioner's decision as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record."  42 U.S.C. § 405 (g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means more than "a mere scintilla."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).  "It means such relevant evidence as a reasonable mind might accept as adequate."  Id.  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  In reaching a conclusion that a claimant is capable of performing work, the ALJ must analyze all the evidence and explain the weight the ALJ has given to probative exhibits.  See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Accordingly, access to the ALJ's reasoning is indeed essential to a meaningful court review.  See Fargnoli, 247 F.3d at 42.  Nevertheless, the District Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Furthermore, evidence not originally presented to the ALJ "cannot be used to argue that the ALJ's decision was not supported by

substantial evidence." Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).  Therefore, if evidence that was not before the ALJ is presented to the District Court, remand to the Commissioner is possible, but is only an option if "the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." Id. at 593.

B.  Standard for Awarding Benefits Under the Act

An individual may not receive disability insurance benefits under the Act unless she first meets statutory insured status requirements.  See 42 U.S.C. § 423; see also Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).  In order for a claimant to be considered disabled, she must be able to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A).  Thus, a claimant is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

To demonstrate that a disability exists, a claimant must present evidence that her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).  Thus, an individual's subjective complaints are not enough to satisfy this threshold for establishing a disability.  Accordingly, the claimant bears the burden of proving the existence

of the alleged disability.  42 U.S.C. § 423 (d)(5)(A).

In accordance with the Act, the ALJ must undertake a five-step evaluation process in order to review a claim for disability insurance benefits.  See 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a).  If the claimant is working and the work is substantial gainful activity, the application for disability benefits is automatically denied.  See 20 C.F.R. § 404.1520(b).  If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(c).  A claimant who does not have a "severe impairment" is not disabled.  Id.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing").  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  See 20 C.F.R. § 404.1520(d).

If the impairment does not meet or equal a listed impairment under the Listing, the ALJ proceeds to step four, which requires a determination whether the limits imposed by claimant's impairment, her RFC, prevent the claimant from returning to the work claimant performed in the past ("Past Relevant Work" or "PRW").  See 20 C.F.R. § 404.1520 (e).  If the claimant is found capable of performing PRW, the claimant is not disabled.  Id.  If the claimant is no longer able to perform PRW, the evaluation must continue to the last step.

The fifth and final step in the evaluative process requires a determination of whether the claimant is capable of performing some other work available in the national economy.  In this last step, the burden shifts to the Commissioner to demonstrate to the ALJ that "there are other

jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." Plummer, 186 F.3d at 428 (citing 20 C.F.R. § 404.1520(f)). Benefits are denied if work exists in the national economy in which the claimant could engage given the above-listed factors. Thus, entitlement to benefits is dependent upon a finding that the claimant is incapable of performing PRW or some other type of work in the national economy.

C. Plaintiff's Appeal

Plaintiff challenges the ALJ's findings at steps three and five of the evaluative process. Specifically, plaintiff asserts the ALJ did not properly evaluate her combined impairments and subjective complaints of pain which she claims are medically equivalent to impairments in the Listing. Plaintiff also argues the ALJ made both factual and legal errors in determining plaintiff's RFC.

1. Step Three Analysis

Plaintiff asserts that the ALJ failed to properly consider whether plaintiff's multiple impairments met or equaled the severity of those in the Listing and further argues the ALJ "apparently misunderstood the medical evidence and severity of her conditions." (Pl. Br. at 13.) Plaintiff claims the arthritis in her knee, a weight-bearing joint, and the combined severity of the pain resulting from arthritis in plaintiff's neck, back and both knees are medically equivalent to impairments in the Listing. (Pl. Br. at 14.) Plaintiff asserts that she "almost meets the severity of

9

two separate Listings[,]" specifically sections 1.02 (A) and 1.04 (A) and (C),[1] and as such, her combined ailments establish her prima facie case of disability on the medical evidence alone. (Id.)  Additionally, plaintiff relies on Burnett v. Commissioner, 220 F.3d 112 (3d Cir. 2000), to support the proposition that the ALJ's discussion of the third step of the evaluative process is insufficient and therefore argues the decision should be remanded for further explanation.[2]  (Id. at 15.)

      The third step analysis in the ALJ's opinion states:

> The [ALJ] has considered all of the claimant's "severe" impairments, singly and in combination, and all of [t]he objective medical evidence in the record in relation to the criteria set forth in 20 C.F.R. 404, Appendix 1 to Subpart P, giving particular consideration to Medical Listing 1.00, as required by Burnette v. Commissioner, (220 F.3d 112).  However, the Administrative Law Judge concludes that the record does not contain the specific medical findings necessary to establish "disability" under the third step of the sequential evaluation process.

(Tr. at 15-16.)

In support of this conclusion, the decision contains a lengthy and in-depth summary of the reports from the attending and consulting physicians. (Tr. at 16-19.)  The ALJ also considered statements made by plaintiff but found plaintiff's subjective allegations of her limitations "not

---

    [1]As plaintiff identified in her brief, the Listings have been amended.  Listing section 1.03 identified by plaintiff has been deleted.  The new section most closely resembling the deleted section is 1.02 (A).  Similarly, Listing section 1.05 (C) identified by plaintiff has been deleted and sections 1.04 (A) and (C) are the most similar in the current version of the Listing.  These sections appeared in the revised 20 C.F.R. dated April 1, 2002, and were the appropriate sections for the ALJ to consider for his May 20, 2002 decision.  Accordingly, for purposes of this analysis the current Listings will be considered.

    [2]Plaintiff also notes that the Listing has been substantially revised since the time of the hearing and argues that remand is appropriate for this reason.  (Id. at 15-16.)  As noted above, those revisions are considered in this review.

10

totally credible." (Tr. at 21.)

As discussed above, the mere presence of a condition is insufficient to establish a disability. Alexander v. Shalala, 927 F.Supp. 785, 792 (D.N.J. 1995) *aff'd per curiam*, 85 F.3d 611 (3d Cir. 1996). Although plaintiff claims her impairments were almost equivalent to the severity of two separate listings, the ALJ found that the medical evidence and testimony presented did not support such a finding. Indeed, the record reflects that the ALJ gave particular attention to Medical Listing 1.00 - Disorders of the Musculoskeletal System. (Tr. at 15-16.) Yet after the ALJ considered the reports from all of the treating and consulting practitioners, as well as plaintiff's testimony describing her subjective symptoms, he found that "the record does not contain the specific findings necessary to establish 'disability' under the third step of the sequential evaluation process." (Tr. at 15.)

The ALJ's finding is supported by substantial evidence in the record, including the numerous medical reports summarized in the opinion. (Tr. at 16-19.) The ALJ noted that, although plaintiff reports an onset of her disability as of May 31, 1979, there is no evidence in the record establishing any impairment earlier than June 1997. (Tr. at 15.) The record reflects that plaintiff has degenerative arthritis of the cervical spine, lumbar spine and both knees, and plaintiff was involved in an automobile accident on September 10, 2000, that may have exacerbated pain in those regions. (Id.) However, the medical reports indicate that even after the automobile accident plaintiff ambulates without difficulty, does not require assistive walking devices, and has normal range of motion in her upper and lower limbs and extremities. (Tr. at 18; 89; 189-90.) Additionally, the findings reveal plaintiff has neither atrophy nor any motor or sensory abnormality in her upper or lower limbs or extremities. (Id.)

Read as a whole, it is clear that the ALJ did consider the appropriate factors in reaching the conclusion that plaintiff did not meet the requirements for any section in the Listing, including those identified in plaintiff's brief.  Specifically, plaintiff asserts her combined impairments are medically equivalent to section 1.02(A), which identifies major dysfunction of a weight-bearing joint "resulting in inability to ambulate effectively[.]"  20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.02(A).  Plaintiff also points to sections 1.04(C) of the Listing, which identifies disorders of the spine including osteoarthritis, resulting in compromise of a nerve root or the spinal cord that "established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively[.]"  Id. at §1.04(C).  Both Listings require a showing that the disorder result in an "inability to ambulate effectively" which is defined in the Listing as "an extreme limitation of the ability to walk" and generally requiring the use of hand held assistive devices.  Id. at §1.00(B)(2)(b).  Finally, section 1.04(A) requires a finding of "nerve root compression characterized by . . . limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss[.]"  Id. at §1.04(A).

As noted above, the ALJ's opinion reflects that he considered plaintiff's various objective and subjective symptoms.  However, despite plaintiff's impairments and reports of pain, the record reflects and the ALJ's opinion noted plaintiff is able to ambulate effectively without a cane or other assistance device and that plaintiff has full range of motion in her lower limbs and extremities.  (Tr. at 19.)  The ALJ's opinion also included the evaluating doctor's finding that plaintiff "did not have any limitations on her ability to lift/carry, stand/walk, or sit."  (Tr. at 20.) Furthermore, the record indicates plaintiff had no problem with strength, sensation, motor ability

or reflex loss and there was no finding of atrophy. (Tr. at 89-90, 111, 190, 202-03.) Therefore, the record is clear that the ALJ did consider the factors necessary to determine plaintiff's combined impairments were medically equivalent to those in the Listing.

Accordingly, this Court finds there is sufficient evidence in the record to support the ALJ's finding at step three of the evaluative process.

2. Step Five Analysis

Plaintiff also challenges the ALJ's determination at step five. She asserts the ALJ improperly discounted her subjective symptoms in determining her RFC and therefore, the findings that plaintiff has a RFC to perform medium work and that there are jobs in the national economy that she could perform were in error. However, review of the record indicates there is sufficient evidence to support the ALJ's conclusion.

As discussed above, the ALJ provided a thorough summary of all of the medical evaluations and reports discussing plaintiff's condition. At trial, the ALJ elicited testimony from the plaintiff about her subjective symptoms of plain in her back, neck and legs and inquired about her treatment. The ALJ noted in the opinion that "no treating or examining physician has imposed any limitations on [plaintiff's] functional abilities." (Tr. at 19.) The ALJ also relied upon an examining physician's opinion that plaintiff "had no limitations on her ability to lift, stand/walk, or sit; and could occasionally perform postural activities[.]" (Tr. at 18.) Furthermore, the ALJ determined plaintiff's subjective complaints of pain were not fully credible because he found plaintiff's testimony "overly vague; needed much prompting and leading by the representative; are exaggerated considering the medical findings; and are inconsistent with the

much higher level of daily activities indicated." (Tr. at 19.) Review of the record fails to reveal any evidence to contradict this determination.

In determining if there are jobs available in the national economy that plaintiff could perform, the ALJ appropriately considered plaintiff's age, experience, education, past work experience, and RFC. The record reflects that the ALJ also considered plaintiff's credibility in assessing her subjective complaints of pain and this Court must lend "great weight" to the ALJ's findings in this regard. See Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

The ALJ also relied upon the testimony of a vocational expert. After reviewing plaintiff's file and listening to her testimony, the expert responded to hypotheticals posed by the ALJ and by plaintiff's attorney. The expert reported plaintiff is capable of making an adjustment to work other than cutting hair. Specifically, the expert identified various jobs, described as light unskilled and semi-skilled that are available in the national economy that a person with plaintiff's limitations could perform. Therefore, the record reflects the ALJ did give consideration to all of the medical results, the opinion of the vocational expert, as well as plaintiff's credibility in finding there are jobs available in the national economy that plaintiff is capable of performing.

For the foregoing reasons, this Court finds there is substantial evidence to support the ALJ's determination at step five that plaintiff has a RFC to perform medium work and that there are a significant number of jobs in the national economy that she can perform. Accordingly, plaintiff's appeal is denied.

s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

Dated: September 22, 2005